M.J. DiCorpo, Inc., d.b.a. Gupta, DiCorpo & Dykman, et al., Appellees and Cross-Appellants, *v.* Sweeney et al., Appellants and Cross-Appellees.

[Cite as *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497.]

(No. 93–186—Submitted April 19, 1994—Decided June 29, 1994.)

498

500

*Goodman Weiss & Freedman, Robert A. Goodman* and *Steven J. Miller,* for appellees and cross-appellants.

*Gallagher, Sharp, Fulton & Norman, Burt Fulton* and *Jay Clinton Rice,* for appellants and cross-appellees.

DOUGLAS, J. Appellants appeal, urging that the alleged oral "Compensation Agreement" is unenforceable as a matter of law and that, therefore, the court of appeals erred in finding that summary judgment was improper on appellees' claims for breach of contract. Appellees cross-appeal from the judgment of the court of appeals which affirmed the trial court's decision granting summary judgment on the claims set forth in the supplemental complaint. Given the procedural posture of this case, all relevant evidence must be viewed in a light most favorable to appellees who opposed the motions for summary judgment at the trial court level. See Civ.R. 56(C).

## I

### Appellants' Appeal

The "Compensation Agreement" which formed the basis for appellees' original complaint consisted of an alleged verbal agreement that appellees' fee for arranging the proposed merger would be two percent of the ultimately agreed-upon merger price, with RESCO and CCSL & G each obligated to pay one-half of that commission. The letter of intent executed by representatives of RESCO and CCSL & G memorialized that oral agreement and stated that appellees were

entitled to a fee of two percent "upon completion of this deal." In his deposition, Michael J. DiCorpo testified that the "Compensation Agreement" consisted of a promise or an understanding that Sweeney (or RESCO) would be obligated to pay one-half of appellees' commission, which was to be calculated based upon whatever consideration for the merger appellees were able to obtain for Sweeney—*i.e.*, whatever appellees "got for him" in connection with a merger of RESCO and CCSL & G. Affidavits submitted by DiCorpo and Michael L. Climaco substantiated appellees' claims as to the existence and terms of the oral "Compensation Agreement." However, the facts of this case are clear that Sweeney never received anything for the merger because the merger, in fact, never occurred. Thus, in our judgment, appellees were not entitled to anything under the very terms of the oral "Compensation Agreement."

Nevertheless, appellees claim a right to a two-percent commission on a merger that never occurred based upon the assumption that the November 1, 1989 letter of intent constituted a binding "Merger Contract" which was breached by appellants. Appellees urge that "[t]he Consulting Firm was not responsible for Sweeney's repudiation of the merger. Nor was it responsible for the failure of the Sweeney Firm to carry through on its Merger Contract [*i.e.*, the letter of intent]. It still is entitled to receive its compensation, even though today the law firms are not merged." However, we find that the letter of intent does not constitute a binding merger agreement. Nor does it amount to a specific agreement to agree to a merger in the future. As we stated in *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 105–106, 2 OBR 653, 656, 443 N.E.2d 161, 164, "[i]t is thus not the law that an agreement to make an agreement is *per se* unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." Here, the express terms of the letter of intent clearly indicate that that document was nothing more than an agreement to principles which were subject to further negotiation and a detailed and definitive merger agreement. While the letter may have provided the basic framework for future negotiations, the letter itself did not address all the essential terms of the merger. Thus, the letter of intent is not a legally enforceable contract.

Moreover, even if we were to assume that the letter of intent was a specific agreement to agree to a merger in the future, the terms of the definitive agreement submitted to Sweeney after the signing of the letter of intent were such that Sweeney might have received nothing had the merger occurred. The definitive agreement provided for certain adjustments to the amounts Sweeney might have been entitled to receive had the law firms combined, and contained a variety of obligations and contingencies that might have further reduced (or nullified) the amount Sweeney was to receive for the merger. In this regard, we

are in complete agreement with Judge (now Justice) Francis E. Sweeney's dissent in the court of appeals:

"At his deposition, Mr. DiCorpo repeatedly testified that his only explanation to Mr. Sweeney of the amount of his commission was 'two percent of whatever I got for him.' Since the merger was never completed, and since Mr. Sweeney could [might] have received nothing even if the merger had been completed, I believe * * * [DiCorpo's] discussions of the terms of his fee of two percent [were] so indefinite as to make any alleged oral agreement illusory and unenforceable."

Therefore, we find that summary judgment was properly granted on the claims for breach of the alleged oral "Compensation Agreement." Thus, on this issue, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

We note that the court of appeals did not determine whether the trial court erred in granting summary judgment on appellees' claims for unjust enrichment. Rather, the court of appeals' majority found that this issue was moot given its determination that summary judgment should not have been granted on the claims for breach of the oral "Compensation Agreement." However, we have found that appellants were entitled to summary judgment on the claims for breach of contract and, thus, it is appropriate for us to now consider whether the trial court erred in granting summary judgment on the claims for unjust enrichment. We find that the trial court did not err in this regard. The record indicates that (1) appellants were not unjustly enriched in connection with the services performed by appellees on the proposed merger, and (2) appellants contractually agreed to pay appellees at a reasonable hourly rate for the consulting services rendered.[3]

Accordingly, we reverse the judgment of the court of appeals on the issues raised in appellants' appeal, and reinstate the judgment of the trial court granting summary judgment in favor of appellants on the claims set forth in the original complaint.

## II

### Appellees' Cross–Appeal

Appellees cross-appeal, challenging the court of appeals' determination that the allegedly defamatory statements made by Sweeney in his affidavit to the county prosecutor were protected by an absolute privilege.

---

3. Apparently, appellees have yet to be paid for the consulting services performed in October and November 1989, which services were billed to appellants at the applicable hourly rates. However, appellees have not sought payment of the *hourly* fees in this case.

In *Bigelow v. Brumley* (1941), 138 Ohio St. 574, 579–580, 21 O.O. 471, 474, 37 N.E.2d 584, 588, this court said:

"Upon certain privileged occasions where there is a great enough public interest in encouraging uninhibited freedom of expression to require the sacrifice of the right of the individual to protect his reputation by civil suit, the law recognizes that false, defamatory matter may be published without civil liability. * * *

"Such privileged occasions have by long judicial history been divided into two classes—occasions absolutely privileged and those upon which the privilege is only a qualified one. The distinction between these two classes is that the absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity; whereas the presence of such circumstances will defeat the assertion of a qualified privilege. * * *

"It has been said by many courts that the occasions of absolute privilege are few and that the tendency is to limit them rather strictly to the following types of occasions: (1) The legislative proceedings of sovereign states; (2) judicial proceedings in established courts of justice; (3) official acts of the chief executive officers of state or nation; and (4) acts done in the exercise of military or naval authority. * * *"

We find that one of the established occasions of absolute privilege is directly involved in this case—the doctrine of absolute privilege in a "judicial proceeding." We agree with the court of appeals' conclusion that the doctrine of absolute privilege for statements made in a judicial proceeding applies in circumstances where, as here, an affidavit or statement is submitted to a prosecutor for purposes of reporting the commission of a crime. As a matter of public policy, extension of an absolute privilege under such circumstances will encourage the reporting of criminal activity by removing any threat of reprisal in the form of civil liability. This, in turn, will aid in the proper investigation of criminal activity and the prosecution of those responsible for the crime.

Recently, in *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 613 N.E.2d 585, paragraphs one and two of the syllabus, a majority of this court held that:

"1. A complaint filed with the grievance committee of a local bar association is part of a judicial proceeding.

"2. A statement made in the course of an attorney disciplinary proceeding enjoys an absolute privilege against a civil action based thereon as long as the statement bears some reasonable relation to the proceeding. (*Surace v. Wuliger* [1986], 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939, approved and followed.)"

Clearly, if the filing of a grievance with a local bar association is part of a "judicial proceeding," the same must also be true of an affidavit filed with a county prosecutor. The filing of a grievance with the local bar association sets the process in motion for the investigation of the grievance and the possible initiation of a formal complaint. Similarly, the filing of an affidavit, information or other statement with a prosecuting attorney may potentially set the process in motion for the investigation of a crime and the possible prosecution of those suspected of criminal activity. In our judgment, it would be anomalous to recognize an absolute privilege against civil liability for statements made in a complaint filed with a local bar association, while denying the protections of that privilege to one who files an affidavit with the prosecutor's office reporting that a crime has been committed. Granting an absolute privilege under the circumstances of this case is merely a logical extension of this court's holding in *Hecht*, *supra*.

Sweeney's affidavit was sent to the county prosecutor to report the alleged criminal activity of Michael V. Kelley. At that time, it appears no criminal investigation of Kelley was ongoing, and no formal criminal proceedings against Kelley had been initiated. Sweeney's affidavit initiated the process of investigation and possible prosecution of Kelley. The absolute privilege or "immunity" for statements made in a judicial proceeding extends to every step in the proceeding, from beginning to end. See Prosser & Keeton, Law of Torts (5 Ed.1984) 819, Section 114. In this regard, Dean Prosser has noted that, "[a]lthough there is some authority to the contrary, the better view seems to be that an informal complaint to a prosecuting attorney or a magistrate is to be regarded as an initial step in a judicial proceeding, and so entitled to an absolute, rather than a qualified immunity." (Footnotes omitted.) *Id.* at 819–820. We agree with this assessment of the issue.

Appellees contend that the references in Sweeney's affidavit concerning DiCorpo did not bear some reasonable relation to the reporting of Kelley's alleged criminal activity. Since the purpose of Sweeney's affidavit was to inform the proper authorities of *Kelley's* conduct, appellees suggest that the statements concerning DiCorpo were irrelevant and immaterial and, thus, were not protected by an absolute privilege. As we indicated in *Hecht, supra*, the absolute privilege against civil action for statements made in a judicial proceeding extends to those statements which "bear some reasonable relation to the proceeding." *Id.* at paragraph two of the syllabus. See, also, *Surace, supra*, syllabus. We find that the statements in Sweeney's affidavit concerning DiCorpo did bear a substantial relation to the reporting of Kelley's alleged criminal activities. The statements at issue showed the means by which Kelley sought to conceal the alleged embezzlement of funds. Thus, we reject appellees' arguments that such statements were irrelevant, immaterial and impertinent.

Finally, appellees suggest that Sweeney's affidavit impugned DiCorpo by linking DiCorpo with Kelley, thereby placing DiCorpo in a false light before the public. According to appellees, this case provides us with an opportunity to recognize a cause of action in Ohio for invasion of privacy under a "false light" theory of recovery. In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 424, 453 N.E.2d 666, 669–670, we said, "[t]his court has recognized a cause of action for invasion of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35 [59 O.O. 60, 133 N.E.2d 340]. However, this court has not recognized a cause of action for invasion of privacy under a 'false light' theory of recovery. Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory of recovery in Ohio at this time." Given our determination that the statements contained in Sweeney's affidavit cannot form the basis for civil liability, this case (like *Yeager*) is obviously not the appropriate case to consider adopting, or rejecting, the false light theory of recovery.

Accordingly, we affirm the judgment of the court of appeals that appellants were entitled to summary judgment on the claims set forth in the supplemental complaint. We hold that an affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made which bear some reasonable relation to the activity reported.[4]

### III

### Conclusion

For the foregoing reasons, we affirm the judgment of the court of appeals in part, and we reverse it in part. We reinstate the trial court's judgment in favor of appellants on the claims set forth in the original complaint.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., A.W. SWEENEY, WRIGHT, RESNICK, DONOFRIO and PFEIFER, JJ., concur.

GENE DONOFRIO, J., of the Seventh Appellate District, sitting for F.E. SWEENEY, J.

---

4. Appellees have also raised an issue in their cross-appeal concerning the trial court's denial of a motion to compel production of certain documents appellees sought to obtain in connection with the claims for defamation. Appellees' arguments are not well taken since the defamation claims are not actionable under the doctrine of absolute privilege.