DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Larry Hamrick, appeals the judgment of the Medina County Court of Common Pleas granting directed verdicts to the two Appellees, Mark's Cleaning Service, Inc. ("Mark's") and Wellman Products Group ("Wellman"). We affirm and impose sanctions on Appellant.
 {¶ 2} Appellant had been hired by Wellman in 1973. He remained there until he retired in early 2004. Appellant worked at Wellman as a clutch cutter and a furnace tender. Mark's has a contract to complete the cleaning services at the Wellman factory in Medina, Ohio. Mark's employed two female cleaning ladies to work the morning shift at the Wellman factory.
 {¶ 3} This case revolves around an incident between Appellant and the Mark's cleaning ladies at the Wellman plant. On June 28, 2002, Mark's employee, Sheryle Nush, entered the men's restroom to clean it. She testified at trial that, consistent with her training, she placed a "Mark's" sign on the steel door to the restroom, knocked before opening the door, and then announced that she was coming in. She cleaned the four urinals and two of the men's stalls. She got to the third stall in the men's room and pushed open the door. Ms. Nush testified that the third door opened just as easily as the first two stall doors had. When she opened the door of the third stall she saw Appellant sitting on the toilet with his hands on his knees. She testified that he had an erection. Ms. Nush then ran out of the restroom and told her co-worker, Barbara Iverson.
 {¶ 4} Ms. Iverson stated that she was involved in a similar incident with the same man two weeks prior. Ms. Iverson had entered the men's restroom and began cleaning. When she got to the third stall, she pushed the door open and saw Appellant sitting there with an erection. Appellant contests both Nush's and Iverson's versions of the two incidents.
 {¶ 5} The two ladies reported the incidents to Wellman's plant manager, Andrew Chan, and to their own supervisor at Mark's, Al Burrows. Chan interviewed the two ladies, reviewed their statements, and then interviewed Appellant. After investigation of the incidents, managers at Wellman suspended Appellant for thirty days without pay. Appellant had to sign a last chance agreement acknowledging prior disciplinary action and the threat of immediate discharge for any sexually harassing behavior in the future. He was further required to attend psychological counseling through Wellman's Employee Assistance Program before returning to work.
 {¶ 6} Appellant states that he did not hear either cleaning lady announce her entrance into the men's room. Appellant denies that he was engaged in sexual activity when the ladies saw him; he was merely using the restroom. He claims that he has a right to privacy in a closed restroom stall. He testified that the ladies did not accidentally open the stall door, but rather, they intended to open the door as "they shoved it open on [him]." Both parties concede that the doors of the restroom stalls do not lock well and can in fact be pushed open.
 {¶ 7} Appellant alleges that as a result of his privacy being invaded by the two Mark's cleaning ladies, and the investigation and punishment by Wellman, he suffered loss of wage and benefits income, humiliation, anxiety, fear and depression, for which he took medication. He had to see a psychiatric counselor and had to discuss his personal life, how he used the restroom, his sexual performance abilities and other personal information in order to defend himself from the allegations of sexual harassment. Appellant claims that Wellman's treatment of the situation (i.e. suspending him from work, requiring him to see a psychiatrist) amounts to intentional infliction of emotional distress.
 {¶ 8} On April 11, 2003, Appellant filed the instant lawsuit against both Wellman and Mark's. In his complaint, he alleged a cause of action against Wellman for intentional infliction of emotional distress and for invasion of privacy. He also alleged a cause of action for invasion of privacy against Mark's. Trial was had on November 26, 2003. At the close of the Appellant's case, Appellees, Mark's and Wellman, each moved for a directed verdict under Civ.R. 50(A). The trial court granted the motions for a directed verdict as to all claims and dismissed Appellant's case. The journal entry thereto was filed on December 17, 2003. Appellant appeals, asking for this case to be reversed and remanded for a new jury trial. Appellant raises three assignments of error for our review. For ease of discussion, we will review all three assignments of error together.
 ASSIGNMENT OF ERROR I
"The trial court prejudicially and reversibly erred when it granted Appellee Wellman's motion for directed verdict pursuant to [Civ.R.] 50(A) on the claim for intentional infliction of emotional distress."
 ASSIGNMENT OF ERROR II
"The trial court prejudicially and reversibly erred when it granted Appellee Wellman's motion for directed verdict pursuant to [Civ.R.] 50(A) on the claim for invasion of privacy."
 ASSIGNMENT OF ERROR III
"The trial court prejudicially and reversibly erred when it granted Appellee Mark's motion for directed verdict pursuant to [Civ.R.] 50(A)."
 {¶ 9} In all three assignments of error, Appellant claims that the trial court wrongly granted the two Appellees' motions for directed verdict. Appellant claims that the issues of whether he suffered an intentional infliction of emotional distress and whether the two Appellees invaded his privacy are for a jury to decide, and thus a directed verdict was improperly granted in their favor. We disagree.
Directed Verdict
 {¶ 10} A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119. An appellate court reviews de novo the trial court's grant of a directed verdict. Schafer v. RMSRealty (2000), 138 Ohio App.3d 244, 257.
 {¶ 11} Directed verdict motions are governed by Civ.R. 50(A)(4) which provides that when a motion for a directed verdict has been properly made, the trial court must construe the evidence in favor of the nonmoving party. If the court finds that reasonable minds could come to one conclusion and that conclusion is against the nonmoving party, the court shall grant the motion and direct a verdict for the moving party as to that issue. Id.
 {¶ 12} If the party opposing the motion for a directed verdict fails to present evidence on one or more of the essential elements of a claim, a directed verdict is proper. Hargrove v.Tanner (1990), 66 Ohio App.3d 693, 695. However, where substantial evidence is presented such that reasonable minds could come to differing conclusions, the court should deny the motion. Posin v. A.B.C. Motor Court Hotel, Inc. (1976),45 Ohio St.2d 271, 275. "The `reasonable minds' test of Civ.R. 50(A)(4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of that party's claim." Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 69.
 {¶ 13} In the instant case we do not find that Appellant presented adequate evidence to support his claims against Appellees. As explained below, we find that the trial court properly granted Appellees' motions for a directed verdict in favor of both Appellees on the claim for intentional infliction of emotional distress and the two claims for invasion of privacy.
Intentional Infliction of Emotional Distress
 {¶ 14} In his first assignment of error, Appellant argues that the trial court erred in granting a directed verdict in favor of Appellee Wellman as to the claim of intentional infliction of emotional distress. Specifically, Appellant contends that Appellee's
"extreme and outrageous conduct in making false and embarrassing accusations against [Appellant], forcing him to seek psychiatric counseling, effectively labeling him as a sexual deviant, and allowing the public[cation] [of] this information to [Wellman's] workforce amounts to the intentional infliction of emotional distress."
 {¶ 15} To prevail on an intentional infliction of emotional distress claim, a party must show that:
"(1) the defendant intended to cause emotional distress, knew or should have known his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychic injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a mature that no reasonable man could be expected to endure." McPherson v. Goodyear Tire Rubber Co., 9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 33, citing Burkes v.Stidham (1995), 107 Ohio App.3d 363, 375.
 {¶ 16} The Supreme Court of Ohio noted that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not create liability on a claim of intentional infliction of emotional distress. Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 375, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Id.
 {¶ 17} Appellant claims that the determination of what is outrageous is a question of fact for the jury to decide and thus it was in error for the trial court to grant a motion for a directed verdict. We disagree. As a preliminary matter, a trial court makes the threshold determination of what constitutes `outrageousness' as a matter of law. Jarvis v. GerstenslagerCo., 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, at ¶ 69, citing Binns v. Fredendall (1987), 32 Ohio St.3d 244, 245, n. 1.
 {¶ 18} Upon a review of the record, this court does not find that Appellant has established a claim for intentional infliction of emotional distress. Specifically, Appellant has failed to demonstrate that Wellman "intended to cause emotional distress" or that the conduct of Wellman was "so extreme and outrageous that it went beyond all possible bounds of decency[.]"McPherson at ¶ 33.
 {¶ 19} On the day of the incident, Nash and Iverson complained to Wellman's plant manager, Andrew Chan, and to their own supervisor at Mark's, Al Burrows. Burrows advised Nush and Iverson to file police reports. He faxed a letter to Wellman stating that "[t]his is a very serious matter. Please give me in writing what action has been take[n]. I do feel that the police need to be notified ASAP."
 {¶ 20} Chan notified the Wellman human resources manager, Kyra Baumer, and Wellman's maintenance supervisor of the situation. They reviewed Nush and Iverson's written statement and then called them each in for interviews. Then they called in Appellant, asked him for his side of the incident and asked him to write a statement of his own. Appellant denied that he was sexually aroused at the time the ladies had walked in on him. He stated that he did not hear them announce that they were coming in to clean and he did not notice that they were in the restroom. Appellant was suspended temporarily pending Wellman's investigation into the matter.
 {¶ 21} During the investigation, Chan and Baumer learned that other employees had been walked in on by the cleaning ladies. The other employees that had been using the restrooms when the cleaning ladies walked in had announced their presence there and the cleaning ladies had walked back out. No one had been walked in on while they were using a restroom stall. They discovered that most people in Appellant's situation would have put out a hand or a foot or said something as they saw the door to their restroom stall being opened. Appellant did not do anything to prevent the door from opening.
 {¶ 22} Chan and Baumer also reviewed Appellant's personnel file. They found that a year prior to the incident with the Mark's employees, an employee at Wellman complained about comments that Appellant had made that she found offensive. At that time, Appellant had been told about the seriousness of sexual harassment and was warned that he could be terminated if it happened again. At the close of their investigation, Wellman determined that Appellant had exposed himself to the cleaning ladies in violation of its policy against sexually harassing behavior.
 {¶ 23} It was decided that Appellant was to be suspended for thirty days. Additionally, he was to go to counseling and sign a "Last Chance Agreement" stating that if anything similar were to happen again that he would be terminated. Appellant was also referred to the Employees Assistance Program as part of his Last Chance Agreement.
 {¶ 24} Appellant testified that he felt humiliated and depressed. When he returned to work there were all sorts of rumors circulating about him. He felt embarrassed and sad. One day at work he started having chest pains. They persisted and the second day his wife took him to the emergency room. She thought that he was having a heart attack. Testing revealed that the problem was stress and the doctor prescribed Zoloft, an anti-depressant that he takes once a day. Appellant claims that Wellman's actions were extreme and outrageous. He suffered from anxiety, sleeplessness and depression. For these reasons, Appellant claims that Wellman should be found liable for intentional infliction of emotional distress.
 {¶ 25} This Court does not need to make a determination of whether or not Appellant was in fact sexually aroused when the cleaning ladies walked in on him or how well the lock on the bathroom stall door worked. We do not disagree that the experience caused Appellant grief and embarrassment. However, we do not find that the experience made Appellee Wellman liable for intentional infliction of emotional distress. As mentioned above, to be liable for intentional infliction of emotional distress, Appellee must have acted intending to cause emotional distress and the conduct must have been so extreme and outrageous that it went beyond all possible bounds of decency. See McPherson at ¶ 33. Appellant has not shown that Wellman acted intending to cause him severe emotional distress.
 {¶ 26} Chan testified that he believed that Appellant had engaged in sexually harassing behavior. Based on his investigation of the incidents, his conversations with the cleaning ladies and Appellant and his review of Appellant's personnel file, he believed that it was necessary to reprimand Appellant. Chan, Baumer and the vice president of human resources at Wellman were all involved in the decision making process as to what to do with Appellant. They decided that rather than terminate him, they would take a more lenient action which would allow him to keep his job. Chan testified that they had decided to send Appellant to the Employees Assistance Program because they "thought it may help him so that he doesn't get involved in these sorts of incidents again." None of the Wellman managers discussed Appellant's case with anyone else in the plant.
 {¶ 27} This court finds that Wellman's actions were not intended to cause emotional distress nor did they rise to the level of `outrageous.' Wellman was faced with a situation in which it believed action was necessary. There is no showing of malice or intent to cause Appellant suffering.
 {¶ 28} Wellman had a legal obligation to investigate and, if necessary, take prompt action against any sexually harassing behavior it found in the workplace. "[W]here an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing." Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486,493. If an employer does not react to allegations of sexual harassment, he may subject himself to liability for failing to take corrective action. Id.
 {¶ 29} "Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. McPherson at ¶ 34, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d. We find that Wellman's actions in reacting to the allegations of sexual harassment against Appellant were not extreme and outrageous. In fact, Wellman could have been subjected to liability if it failed to react to the cleaning ladies' allegations of sexual harassment. See Kerans,61 Ohio St.3d at 493.
 {¶ 30} Consequently, we do not find that Appellant has demonstrated the elements necessary to support his intentional infliction of emotional distress cause of action. Therefore, the trial court properly granted Wellman's motion for a directed verdict. Accordingly, Appellant's first assignment of error is overruled.
Invasion of Privacy
 {¶ 31} In his second and third assignments of error, Appellant argues that the trial court erred in granting directed verdicts on his cause of action against Wellman and Mark's for invasion of privacy. He claims that "Wellman invaded [his] reasonable expectation of privacy by forcing him to disclose private medical and other information about his personal life to the company * * * as a condition of continued employment." He further maintains that his privacy was invaded when the Mark's cleaning ladies pushed open a closed door of the restroom stall he was occupying. This court holds that neither Wellman nor Mark's are liable to Appellant for invasion of privacy.
 {¶ 32} The Ohio Supreme Court acknowledged claims for invasion of privacy claims:
"involving the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Lamar v. A.J. Rose Mfg. Co. (Oct. 11, 2000), 9th Dist. No. 99CA007326, at 11, quoting Housh,165 Ohio St. 35, at paragraph two of the syllabus.
 {¶ 33} "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Lathwell v. Lorain Cty. Jobsfor Ohio's Graduates (May 10, 2000), 9th Dist. No. 99CA007303, at 8, quoting Sustin v. Fee (1982), 69 Ohio St.2d 143, 145.
1. Appellant's Invasion of Privacy claim against Wellman
 {¶ 34} In his second assignment of error, Appellant claims that the trial court erred in granting Wellman's motion for a directed verdict on his claim for invasion of privacy. Appellant claims that Wellman invaded his privacy by asking him questions about the incident in question and referring him to the Employee Assistance Program counselor. We do not agree.
 {¶ 35} The tort of invasion of privacy includes four separate torts: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. Piro v. Franklin Twp. (1995),102 Ohio App.3d 130, 144, citing Killilea v. Sears, Roebuck Co.
(1985), 27 Ohio App.3d 163, 166.
 {¶ 36} Appellant's sessions with the counselor clearly do not fall into the third or fourth types of invasion of privacy. There is no allegation that Appellant's name or likeness was appropriated and he was not placed in a false light. In order for Appellant to state a claim under the second type of invasion of privacy, public disclosure of private facts, there must be publicity. "Publicity" requires a communication "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge[.]"Killilea, 27 Ohio App.3d at 166.
 {¶ 37} The only category of invasion of privacy that Appellant's claim could fall under is the first: the intrusion into his private affairs. See Piro, 102 Ohio App.3d at 144. We do not find that Wellman can be liable for referring Appellant to a counselor to discuss the situation or for their questioning him about the incident and his completion of the counseling sessions. As discussed above, Wellman had a legal duty to take prompt and appropriate action in response to complaints of sexual harassment, and to take reasonable care to prevent and correct any such behavior. See Peterson v. Buckeye Steel Casings
(1999), 133 Ohio App.3d 715, 724. The sessions with the counselor were intended to help Appellant; they were completely confidential. Wellman had an obligation to investigate the situation and respond to it. It cannot be held liable for invasion of Appellant's privacy where it had a duty to investigate and take action to prevent further complaints of sexual harassment.
 {¶ 38} Wellman had a qualified privilege while it investigated the cleaning ladies' claim and enforced its sexual harassment policy. There is a qualified privilege for statements concerning matters of common business interest. Evely v. CarlonCo. (1983), 4 Ohio St.3d 163, 165. Clearly investigating complaints of sexual harassment and addressing those complaints is a matter of business interest for Wellman. Proof of actual malice is essential to defeat a qualified privilege. A B-AbellElevator Co. v. Columbus/Cent. Ohio Bldg. Constr. TradesCouncil (1995), 73 Ohio St.3d 1, 11. Wellman's actions in response to the complaints about Appellant do not create liability for invasion of privacy. Therefore, Appellant's second assignment of error is overruled.
2. Appellant's Invasion of Privacy Claim against Mark's
 {¶ 39} In Appellant's third assignment of error, he claims that the trial court wrongfully granted Mark's motion for a directed verdict. Appellant claims that the Mark's employees invaded his privacy when they opened the door of the bathroom stall he was occupying.
 {¶ 40} Of the four types of actions for invasion of privacy, the one applicable to this case is the first one, intrusion upon the plaintiff's seclusion or solitude. See Piro,102 Ohio App.3d at 144. The Ohio Supreme Court has held that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Sustin, 69 Ohio St.2d 143, 145, citing Restatement of the Law 2d, Torts (1977) 376, section 652(B). "A mere negligent intrusion into one's private activities does not constitute an actionable invasion of the right of privacy."McCormick v. Haley (1973), 37 Ohio App.2d 73, 78.
 {¶ 41} This Court does not find that Appellant has presented evidence showing that the cleaning ladies intentionally and wrongfully invaded his privacy. The cleaning ladies had been employed, in part, to clean the men's restrooms at Wellman. Appellant agreed that when the ladies had entered the restroom that "they were doing their jobs." They had not entered the bathroom wrongfully; they were merely trying to complete their jobs.
 {¶ 42} The evidence shows that neither Nush nor Iverson intended to open the stall door on Appellant. Both Nush and Iverson stated that before entering the restroom they would knock and announce that they were coming in. Appellant did not respond to their statement. Appellant did not acknowledge that he was in the bathroom stall while Nush and Iverson were cleaning. He did not let them know that he was occupying the stall. Both ladies proceeded to clean the restroom in a systematic manner. They first cleaned the four urinals, then the first two stalls before coming to where Appellant was. Nush testified that the door to Appellant's stall had opened just as easily as the first two doors had opened. There is no showing that they intended to open the stall door in order to expose Appellant. Appellant testified that "[he didn't] think that they intended to open it on [him]." He stated that "[he didn't] think that they knew that [he] was in there."
 {¶ 43} On the evidence presented, this Court does not find that Nush and Iverson invaded Appellant's privacy. There is no showing that they had wrongfully or intentionally opened the door to the stall he was in. The trial court did not err in granting a directed verdict on behalf of Mark's. Appellant's third assignment of error is overruled.
 {¶ 44} We overrule Appellant's three assignments of error and affirm the judgment of the Medina County Court of Common Pleas.
 FRIVOLOUS APPEAL {¶ 45} A court of appeals may impose sanctions pursuant to App.R. 23 when a portion of an appeal is frivolous. Cardone v.Cardone (Aug. 30, 2000), 9th Dist. No. 19867, at 10-11. App.R. 23 provides: "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." A frivolous appeal is one that "presents no reasonable question for review." Talbott v. Fountas (1984),16 Ohio App.3d 226, 226.
 {¶ 46} We find this appeal to be frivolous. Appellant admitted that the cleaning ladies did not open the door on purpose, which negates one of the elements of invasion of privacy. A court of appeals is vested with the discretion to determine whether sanctions are warranted. Transamerica Ins. Co.v. Nolan (1995), 72 Ohio St.3d 320, 322. Absent an abuse of discretion, the decision of the court of appeals to grant sanctions will not be overturned. Id. In accordance with R.C.2505.35, Appellant is ordered to pay $200 in attorney fees and all court costs for this appeal. See Barnoff v. George SinglerEnterprises, Inc. (Nov. 1, 1995), 9th Dist. No. 2419-M, at 4;Jackson v. Kuhns (Feb. 15, 1995), 9th Dist. No. 94CA005869, at 5; Shuler v. McKinney (Sept. 9, 1992), 9th Dist. No. 91CA005231, at 2.
 {¶ 47} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed. Further, we direct Appellant to pay Appellee $200 towards Appellees' attorney's fees in defending this frivolous appeal.
Judgment accordingly.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Boyle, J., concur.