DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Plaintiff-Appellant Ramon Stembridge has appealed from the decision of the Summit County Court of Common Pleas that granted summary judgment in favor of Defendants-Appellees Summit Academy Management and Peter M. DiMezza. This Court affirms.
 I {¶ 2} On April 19, 2005, Plaintiff-Appellant Ramon Stembridge ("Appellant") filed a complaint against Defendants-Appellees Summit Academy Management and Peter M. DiMezza (collectively "Academy"). Appellant alleged unlawful discrimination in violation of R.C. 4112.02; breach of contract; and intentional infliction of emotional distress. The Academy answered Appellant's complaint and denied all legal culpability.
 {¶ 3} On October 31, 2005, the Academy filed a motion for summary judgment. After receiving an extension to respond to the Academy's motion, Appellant replied in opposition to the Academy's motion for summary judgment. On January 12, 2006, the trial court granted the Academy's motion for summary judgment on all three of Appellant's claims.
 {¶ 4} Appellant has timely appealed, asserting three assignments of error. For ease of analysis, we have consolidated Appellant's assignments of error.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON APPELLANT'S DISABILITY DISCRIMINATION CLAIM."
 Assignment of Error Number Two
"THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON APPELLANT'S CONTRACT CLAIM."
 Assignment of Error Number Three
"THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON APPELLANT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM."
 {¶ 5} In his three assignments of error, Appellant has argued that the trial court erred in granting summary judgment to the Academy. We disagree.
Standard of Review
 {¶ 6} An appellate court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12, certiorari denied (1986), 479 U.S. 948,107 S.Ct. 433, 93 L.Ed.2d 383. Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 7} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of a genuine issue of material fact as to some essential element of the non-moving party's claim. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. To support the motion, such evidence must be present in the record and of the type listed in Civ.R. 56(C). Id.
 {¶ 8} Once the moving party's burden has been satisfied, the non-moving party must meet its burden as set forth in Civ.R. 56(E). Id. at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material to demonstrate a genuine dispute over the material facts. Id. See, also, Henklev. Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 9} Pursuant to Civ.R. 56(C):
"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 10} Pursuant to the foregoing standard of review, we examine the evidence presented and each of Appellant's claims.
Evidence Submitted in Support/Opposition to Summary JudgmentMotion Appellant's Deposition
 {¶ 11} The record includes Appellant's deposition, which was taken on September 26, 2005. During his deposition, Appellant testified to the following. He was terminated by Mr. DiMezza at a staff meeting with approximately 16 staff members present. Appellant had never met Mr. DiMezza before the staff meeting. At the meeting Mr. DiMezza talked about an in-service program that had taken place and asked who left the program. After one man raised his hand and explained he had a prior obligation and obtained permission to leave, Mr. DiMezza asked if anyone else left, no one else raised their hands. Appellant continued his testimony and stated that Mr. DiMezza then asked "Where's Ramon?" Appellant raised his hand and Mr. DiMezza came over to him and asked why he left the meeting. Appellant stated that he informed Mr. DiMezza that he was excused from the meeting and Mr. DiMezza responded "What were you thinking, to leave the meeting?" Appellant replied that he was blind in his right eye and that he was offended by the meeting. Appellant testified that he heard Mr. DiMezza mock him about being blind and being offended. Appellant again explained to Mr. DiMezza that he was excused from the exercise portion of the meeting and that "maybe after the eye exercises were finished [he] could return to the meeting." Mr. DiMezza asked Appellant if he returned and Appellant answered no. Mr. DiMezza then told Appellant that his employment was terminated. Appellant testified that he shook the hands of his coworkers as he left the room and spoke with another employee about receiving his paycheck. He was then escorted to another portion of the building to retrieve his belongings. Appellant was eventually escorted out of the building and off of the property.
 {¶ 12} After Appellant was terminated, Ms. Holloway, the Academy's Director, arranged a private meeting with him; she informed him the meeting would lead to him getting his job back. Appellant did not trust anyone from the Academy and did not meet with Ms. Holloway. Appellant was offered his job back, but refused the offer because he "didn't trust them."
 {¶ 13} Appellant found the eye exercise portion of the in-service offensive so he left to call Ms. Holloway; he informed his exercise partner and another member of the staff, but he did not inform the in-service presenter that he was offended or that he was leaving. Ms. Holloway excused Appellant from the exercises and gave him other tasks to complete in the building. She told Appellant that maybe he could return to the in-service after the exercises were complete. Appellant admitted in his deposition that soon after his termination he informed another employee of the Academy that Ms. Holloway instructed him to return to the in-service after the exercises, rather than his later statement that she said he could "maybe" return to the in-service. Appellant explained the discrepancy as a mistake.
 {¶ 14} Appellant testified that he received and reviewed the Academy's employee handbook when he was hired. Appellant also admitted signing the document stating that he read and understood the employee handbook. Appellant admitted that when he first complained about being unjustly fired, he cited race discrimination as the reason.
 {¶ 15} Appellant testified that during the hiring process he informed the Academy he was blind in one eye, but he did not ask for special treatment because of it. Appellant never asked for special treatment from anyone at the Academy because of his blindness. Appellant believed he was terminated due to his blindness because "it was no accommodation [to his blindness] and the respect from my administrator was not even thought of." Appellant felt his request to be excused was not honored. Appellant did not know if any staff members ever made negative comments about his blindness.
 {¶ 16} Appellant testified that the "serious emotional distress" alleged in his complaint was from his co-workers "watching Mr. DiMezza humiliate [him]." Appellant replays the termination in his mind and has suffered depression, but he has not sought treatment for it. Appellant also suffers from sleeplessness, but has not sought treatment for it. Appellant testified that he has thought of physical retaliation against people at the Academy, but he has not sought treatment for it. Appellant has spoken to his pastor about his termination and the feelings he has about the situation.
Appellant's Application For Employment
 {¶ 17} Appellant twice completed an application for employment with the Academy. Appellant signed the applications which contained a statement that all employees served "at will."
Academy Employee Handbook
 {¶ 18} Appellant signed the acknowledgement section of the employee handbook on August 11, 2004 which stated that he read and understood its contents. The handbook contained the following relevant clauses:
"[E]mployment without a written agreement to the contrary executed by an officer of the SAM Board is not for any specific term or duration. The employment relationship may be terminated at will by either you or SAM. SAM understands, however, and you must also, that notice is not always possible or practical."
"SAM shall have complete discretion in administering the level of discipline based on the offense."
"Unless you have a written agreement to the contrary, signed by the SAM Board, employment with Summit Academy Management is at-will and is not for any specific duration or term. Summit Academy Management reserves the right to terminate employment at will with or without cause."
"Employment Termination Employment of any staff member by Summit Academy Management will be employment at will and subject to termination by the SAM Board of Directors for any reason and at anytime."
Affidavit of Academy Chief Executive Officer
 {¶ 19} Peter DiMezza submitted an affidavit in support of the Academy's motion for summary judgment. Mr. DiMezza stated in his affidavit that he was informed by the Academy's Director that Appellant left the in-service without permission and did not return. Mr. DiMezza terminated Appellant at the staff meeting regarding the in-service. Mr. DiMezza never met Appellant before the meeting and had no knowledge of his vision problems. Mr. DiMezza averred that Appellant was terminated for not returning to the seminar. After talking with other employees of the Academy, Mr. DiMezza extended Appellant an unconditional offer to return to the Academy. Appellant rejected the offer.
Affidavit of Appellant
 {¶ 20} Appellant denied the Academy's claim that he was terminated due to insubordination. Appellant also stated that the treatment he received was outrageous.
Discrimination Claim
 {¶ 21} Appellant has argued that the trial court erred in granting summary judgment to the Academy on his discrimination claim because his termination was a result of his blindness. We disagree.
 {¶ 22} To establish a prima facie disability wrongful discharge violation of R.C. 4112.02(A), a plaintiff must show that 1) he is disabled; 2) he suffered an adverse employment action at least in part due to his handicap; and 3) that he could safely and substantially perform all essential functions of the job. Hood v. Diamond Products, Inc. (1996), 74 Ohio St.3d 298,302. Once the prima facie case is established, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for their action. Id. If said reason is offered, the burden shifts back to the plaintiff to demonstrate that the reason is actually pretext for impermissible discrimination. Id.
 {¶ 23} Assuming arguendo, that Appellant is disabled and he established his prima facie case, the burden shifted to the Academy to offer a legitimate, nondiscriminatory reason for terminating Appellant. As shown in the record, the Academy offered insubordination as its reason for terminating Appellant. The record shows that while Appellant was granted permission to leave the in-service during the exercises he did not return after the exercises. Mr. DiMezza's affidavit demonstrates that he thought Appellant was ordered to return to the in-service after the exercises and Appellant failed to do so, therefore he was insubordinate. Appellant's deposition, while not entirely clear, also showed that Ms. Holloway indicated Appellant should return to the in-service after the exercises. We find based on the evidence in the record, the Academy provided a legitimate, nondiscriminatory reason for terminating Appellant. Specifically, insubordination on the part of an employee claiming discrimination is a legitimate, nondiscriminatory reason for termination. See Hood, 74 Ohio St.3d at 302.
 {¶ 24} With the burden shifted back to Appellant, he was required to show that insubordination was merely a pretext for his termination; he needed to demonstrate the pretext with actual evidence, not just conclusory, self-serving statements. "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." (Quotations and citation omitted). McPhersonv. Goodyear Tire Rubber Co., 9th Dist. No. 21499,2003-Ohio-7190, at ¶ 23. To show pretext, one must "produce evidence that the employer's stated reasons were factually untrue." (Citation omitted). Id. In support of his argument that he was terminated due to his blindness, Appellant presented his deposition testimony and his affidavit, in which he only asserted that insubordination was merely a pretext for his termination. Appellant did not provide any evidence to support his claims that he was really fired because he was blind in his right eye. Appellant did not dispute the fact that Mr. DiMezza had never met him before the day he was fired or that Mr. DiMezza did not know he was partially blind until he fired him. Appellant has not presented any evidence that could lead this Court to find that Mr. DiMezza fired him for any reason other than insubordination. Based on the evidence presented, we find that Appellant has failed his burden to show pretext. Accordingly, no genuine issue of material fact remains on this claim, the Academy is entitled to judgment as a matter of law and reasonable minds can only conclude that Appellant was fired for insubordination. Therefore, the trial court did not err in granting summary judgment to the Academy on Appellant's unlawful discrimination claim. Appellant's first assignment of error is without merit.
Breach of Contract Claim
 {¶ 25} Appellant has argued that the trial court erred in granting summary judgment to the Academy on his breach of contract claim because the employee handbook created a contract and the Academy should have followed the disciplinary procedures set forth in the handbook. We disagree.
 {¶ 26} An employment relationship is terminable at the will of either party unless expressly stated otherwise. (Citation omitted). Henkel v. Educational Research Council of Am. (1976),45 Ohio St.2d 249, 255. However, the employment-at-will doctrine is the subject of two exceptions: (1) the existence of an implied or express contract which alters the terms of discharge; and (2) the existence of promissory estoppel where representations or promises were made to an employee. Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, 104. Appellant has argued that his employee handbook constitutes an exception to the employment-at-will doctrine.
 {¶ 27} Generally, employee handbooks do not constitute an employment contract. Rudy v. Loral Defense Sys. (1993),85 Ohio App.3d 148, 152. This Court has previously held that "`employee manuals and handbooks are usually insufficient, by themselves, to create a contractual obligation upon an employer.'" Gargasz v.Nordson Corp. (1991), 68 Ohio App.3d 149, 155, quoting Manofskyv. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663. But, evidence of an employee handbook may be considered when deciding whether an implied contract exists, but its existence alone is not dispositive of the question. Wright v. Honda of Am. Mfg.,Inc. (1995), 73 Ohio St.3d 571, 574-575.
 {¶ 28} In Karnes v. Doctors Hospital (1990),51 Ohio St.3d 139, 141, the Ohio Supreme Court held that an employee handbook that expressly disclaimed any employment contract could not be characterized as an employment contract. This Court has also addressed disclaimers and found that "`[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.'"Westenbarger v. St. Thomas Med. Ctr. (June 29, 1994), 9th Dist. No. 16119, at 7, quoting Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, paragraph one of the syllabus.
 {¶ 29} This Court has also addressed the issue of employee handbooks and employment contracts in Ridgill v. Little ForestMedical Center (June 28, 2000), 9th Dist. Nos. 19501 and 19530. In Ridgill, we decided that "[m]erely providing employees with some direction as to the likely sanction for various types of malfeasance does not operate to bind the employer to its employee in an express or implied contract." Id. at 11. We held that a provision regarding a probationary period did not create a genuine issue of material fact as to whether an employment contact existed. Id.
 {¶ 30} The handbook in the instant matter contains three different disclaimers that employment was at will. Moreover, the application for employment, which Appellant signed on two separate occasions, stated that employment was at will. Accordingly, we find that the disclaimer language in the employee handbook, taken together with the acknowledgment form, precludes an employment contract other than at will based upon the terms of the employee handbook. See Westenbarger, supra.
 {¶ 31} Appellant has argued that the disciplinary section of the handbook afforded him certain rights that were not provided. We disagree. While that section does contain various levels of discipline, it also states that the employer has complete discretion in the discipline level applied. As we found inRidgill, providing a list of disciplinary actions does not create a contract or a right to said actions when the handbook clearly states employment is at will and the employer has discretion in enforcing the disciplinary procedures.
 {¶ 32} Based on the foregoing, we find that no genuine issue of material fact remains regarding Appellant's breach of contract claim. The Academy is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, which is adverse to Appellant. Appellant's second assignment of error lacks merit.
Intentional Infliction of Emotional Distress Claim
 {¶ 33} Appellant has argued that the trial court erred in granting summary judgment to the Academy because his firing constituted intentional infliction of emotional distress. We disagree.
 {¶ 34} To establish a claim of intentional infliction of emotional distress, one must show that:
"(1) the defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychic injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable man could be expected to endure." McPherson at ¶ 33, citing Burkes v.Stidham (1995), 107 Ohio App.3d 363, 375.
The Ohio Supreme Court has addressed intentional infliction of emotional distress and found that:
"`It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim, "Outrageous!"'"Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-375, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment d.
Moreover, "`mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities'" do not create liability on a claim of intentional infliction of emotional distress. Id.
 {¶ 35} As a preliminary matter, a trial court makes the threshold determination of what constitutes "outrageousness" as a matter of law. Jarvis v. Gerstenslager Co., 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, at ¶ 69, citing Binns v.Fredendall (1987), 32 Ohio St.3d 244, 245, n. 1. Accordingly, in reviewing the trial court's granting of summary judgment to the Academy on Appellant's intentional infliction of emotional distress claim, we must determine if the conduct alleged constitutes "outrageous" conduct.
 {¶ 36} In making said determination, we must look to the evidence presented. We begin our review of the evidence by noting that "[a] party's unsupported and self-serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ.R. 56, are simply insufficient [to overcome a properly supported motion for summary judgment]." (Citations omitted.) Bank One, N.A. v. Burkey (June 14, 2000), 9th Dist. No. 99CA007359 (Slaby, P.J., dissenting in part). While the record appears void of evidence to support any of the four elements of intentional infliction of emotional distress, our decision focuses on the lack of "outrageous" conduct. Appellant has argued that Mr. DiMezza's conduct was so "outrageous" that it caused him serious emotional distress. Appellant testified at his deposition that his firing in front of 16 coworkers was humiliating and that he heard Mr. DiMezza mock him about being blind and about being offended by the in-service exercises. Appellant did not explain how Mr. DiMezza "mocked" him and he failed to present testimony from any of his 16 coworkers who were present during his firing. Appellant has also asserted that the normal business practice of escorting a terminated employee from the employer's premises caused him emotional distress.
 {¶ 37} Based on the record before us, we find as a matter of law that the conduct alleged was not outrageous. First, we note that Appellant failed to present corroborating evidence regarding the conduct during his firing or its affect on him. Appellant's self-serving, non-descriptive statements were not sufficient to overcome his reciprocal summary judgment burden. Moreover, even taken as true, the evidence presented does not show outrageous conduct. Rather it portrays mere insults and indignities. Appellant did not produce any evidence of conduct that went beyond all possible bounds of decency. See Yeager, supra. While Mr. DiMezza's alleged behavior was inappropriate, we find it did not rise to the level necessary for an intentional infliction of emotional distress claim.
 {¶ 38} Having viewed the evidence in a light most favorable to Appellant, this Court finds that no genuine issue of material fact remains on this claim. The Academy is entitled to judgment and reasonable minds can only conclude that outrageous conduct did not occur. Accordingly, the trial court did not error in granting summary judgment to the Academy and Appellant's third assignment of error lacks merit.
 III {¶ 39} Appellant's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Moore, J. Boyle, J. concur.