[Cite as *Sturdevant v. Likley*, 2013-Ohio-987.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

HEATHER STURDEVANT

    Appellant

    v.

TERRI LIKLEY

    Appellee

C.A. No.     12CA0024-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    11CIV0493

DECISION AND JOURNAL ENTRY

Dated: March 18, 2013

---

MOORE, Judge.

{¶1}    Plaintiff-Appellant, Heather Sturdevant, appeals from the March 12, 2012 entry of summary judgment against her in the Medina County Court of Common Pleas. For the following reasons, we affirm the trial court's judgment.

I.

{¶2}    Heather Sturdevant met Jim Likley in 2008 when he was a Westfield Township Trustee and she was interviewing for a position on the local Zoning Board. She was appointed to the Zoning Board and, the following year, ran unsuccessfully against Mr. Likley and two other candidates for a seat on the Westfield Township Board of Trustees. According to Ms. Sturdevant, both Mr. Likley and his wife, Terri Likley, knew that Ms. Sturdevant planned to run against Mr. Likley again in 2011.

{¶3}    There is no dispute that, at a public meeting of the Westfield Township Board of Trustees in March 2011, Mrs. Likley made a comment about "rumors" that Ms. Sturdevant was

"having an affair." Ms. Sturdevant testified at deposition that she has been married since 2004 and has never had an extramarital affair. Although an audio recording of the meeting apparently exists, a copy has not been included with the record on appeal. The record does include the deposition testimony of Ms. Sturdevant, including a partial written transcript of the recording of the meeting. Ms. Sturdevant testified that the partial transcript accurately depicts the events of the meeting as recorded on the CD.

{¶4} The parties seem to agree that, at the time of the meeting, Ms. Sturdevant and Mr. Likley were publically at odds regarding a contentious political issue facing the township. At the meeting, Ms. Sturdevant had pressed Mr. Likley about whether he had been secretly meeting with a former trustee to discuss the issue. Mrs. Likley responded to that line of inquiry by addressing Ms. Sturdevant directly. In front of the Trustees and a number of residents in the audience, Mrs. Likley said, "Let me tell you Honey, if all the rumors around here were true, then obviously you're having an affair[.]" According to the partial transcript, after the comment about the affair, Mr. Likley told his wife to "stop." Mrs. Likley then said, "so we don't believe that * * * we don't believe that but * * * that's what happens with rumors[.]" No further comments from Mrs. Likley were recorded on the CD of the meeting, but Ms. Sturdevant testified that, as she was walking to the back of the room after the meeting ended, "Mrs. Likley continued to scream at [her] and * * * stated * * * 'That will keep you from winning this election, that ought to stop you in your tracks, you'll never beat my husband now.'"

{¶5} The evidence indicates that approximately 20 residents attended the meeting and the audio recording was later accessible online through the township's website. Ms. Sturdevant testified that Mrs. Likley's public statement "has escalated and continued to traumatize [her] through different people approaching [her] since that date." She testified that, less than two

weeks after the meeting, she was in a grocery store in Lodi when a woman Ms. Sturdevant had never met said to her companion, "hey look there is that girl [who] is having the affair." She said that "[p]eople have continued talking about this and have actually discussed it at county-wide meetings and have accused [her] of having an affair there." She also said that an unknown woman approached her at an Akron Planning Association training session to say that she could not believe some woman in Westfield Township is having an affair with two trustees. Ms. Sturdevant testified that she had never heard any rumors about her having an extramarital affair until Mrs. Likley raised that issue at the public meeting in March 2011. She said that the experience has caused her to lose confidence in campaigning, that she now worries about her marriage, has sought advice from a member of the clergy, and has been diagnosed with a peptic ulcer. In November 2011, Ms. Sturdevant lost the campaign for township trustee to Mr. Likley.

{¶6} Ms. Sturdevant sued Mrs. Likley for defamation, false light invasion of privacy, and intentional infliction of emotional distress. Mrs. Likley moved for summary judgment, which the trial court granted as to all claims. The trial court based its decision on its determination that Mrs. Likley's comments were opinion rather than factual statements. Ms. Sturdevant has timely appealed, setting forth four assignments of error for our consideration. In order to facilitate our discussion, we will address Ms. Sturdevant's first and second assignments of error together.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE STATEMENTS MADE BY [MRS.] LIKLEY AT THE MARCH 7, 2011 PUBLIC MEETING WERE NOT STATEMENTS OF FACT.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING [MS.] STURDEVANT'S DEFAMATION CLAIM AGAINST [MRS.] LIKLEY.

{¶7} In her first and second assignments of error, Ms. Sturdevant argues that the trial court incorrectly granted summary judgment on the defamation claim because it incorrectly applied the test for determining whether allegedly defamatory speech is protected opinion. "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. City of Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 7 (1995).

{¶8} The Ohio Supreme Court has held that "[t]he Ohio Constitution provides a separate and independent guarantee of protection for opinion ancillary to freedom of the press." *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281 (1995). The Supreme Court subsequently extended that independent protection to non-media defendants. *Wampler v. Higgins*, 93 Ohio St.3d 111, 112 (2001). "[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." *Vail* at 280. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St. 3d 1, 2012-Ohio-4961, ¶ 3.

{¶9} "When determining whether speech is protected opinion a court must consider the totality of the circumstances. Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared." *Vail* at syllabus. "This analysis is not a bright-line

test. * * * [It] can only be used as a compass to show general direction and not a map to set rigid boundaries." *Wampler* at 126, quoting *Vail* at 282. "The weight given to any one factor under this inquiry will vary depending on the circumstances of the case." *Wampler* at 126.

{¶10} The trial court held that Mrs. Likley's statement was not actionable because it was offered in the context of making a point about not relying on rumors, and Mrs. Likley said moments later that she did not believe the rumors that she had heard about Ms. Sturdevant having an affair. The trial court also wrote that it believed that the mandate to categorize statements as fact or opinion for purposes of a defamation claim should apply to other causes of action as well. Therefore, because it had determined the statement was not actionable fact for defamation purposes, it held that Ms. Sturdevant could not maintain her causes of action for the torts of false light and intentional infliction of emotional distress. On appeal, Ms. Sturdevant has argued that the trial court incorrectly determined that the contested statement was protected opinion.

{¶11} The first step in determining whether allegedly defamatory speech is protected opinion is to evaluate the specific language to determine the common meaning of the words used and consider what the specific language would mean to an ordinary listener. *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986); *Vail* at 279. The court "must determine whether a reasonable [listener] would view the words used to be language that normally conveys information of a factual nature or hype and opinion; whether the language has a readily ascertainable meaning or is ambiguous." *Vail* at 282. Regardless of the speaker's subjective intent, "the law charges the [speaker] of an allegedly defamatory statement with the meaning that the reasonable [listener] attaches to [it]." *McKimm v. Ohio Elections Comm.*, 89 Ohio St.3d 139, 145 (2000).

{¶12} The language in this case is not ambiguous. The term "having an affair" is generally understood to mean that a married person is having an illicit sexual relationship with someone other than her spouse. Contrary to Ms. Sturdevant's argument, however, Mrs. Likley did not tell the crowd that Ms. Sturdevant was having an affair. Mrs. Likley told the crowd that one should not trust rumors. She presented the "rumor" about Ms. Sturdevant as an example of an absurd story supportive of her point that one should not rely on rumors. We believe that the average listener would not have perceived Mrs. Likley's statement as an assertion of fact, that is, that Ms. Sturdevant was having an affair.

{¶13} The next step in the test is to consider whether the statement is verifiable. *Vail* at 283. The Ohio Supreme Court has explained that "the expression of opinion becomes as damaging as an assertion of fact" if a speaker "represents that he has private, first-hand knowledge which substantiates the opinions he expresses[.]" *Scott* at 251. Whether one should rely on rumors is an opinion. Whether one should believe the specific rumor about Ms. Sturdevant is also an opinion. Mrs. Likley did not imply that she had any first-hand knowledge that caused her to believe the rumor she had heard about Ms. Sturdevant. In fact, Mrs. Likley's opinion was that the rumor was false. She presented it in order to make a point.

{¶14} The final two steps of the test require an evaluation of the general objective and subjective context in which the statements were published as well as the broader context. *Scott* at 252. This includes an analysis of the "general tenor" of the speech. *Vail* at 282. Mrs. Likley made the statement at a public meeting of the Board of Trustees of Westfield Township during the part of the meeting when residents are permitted to be heard.

{¶15} Mrs. Likley did not present the statement in an effort to persuade her listeners to believe the rumors. Mrs. Likley was merely offering an example to bolster her opinion that

people should avoid drawing conclusions from rumors. Considering the broader context, Ms. Sturdevant pointed to some evidence tending to show that Mrs. Likley was angry with Ms. Sturdevant for publically questioning her husband, a township trustee, about whether he had been secretly meeting with a former trustee to discuss township business. This might well be true. Assuming that to have been Mrs. Likley's motivation, the law is concerned only with the meaning that the reasonable listener attached to it, not the speaker's subjective intent. *See McKimm* at 145. In the context of the meeting and the conversation about whether Mr. Likley had been secretly meeting with a former trustee to discuss township business, the reasonable listener would not have understood Mrs. Likley's comments to be an allegation of infidelity. The audience would have understood the comments to be aimed at persuading them not to believe rumors about either party.

{¶16} The Ohio Supreme Court has explained that "[o]bjective cautionary terms" such as "in my opinion" and "I think," "place[ ] the [listener] on notice that what is being [heard] is the opinion of the [speaker]." *Scott* at 252. Although such terms are not dispositive, they "strongly militate in favor of the statement as opinion." *Id.* In this case, Mrs. Likley made it clear that she did not believe the rumor and urged others not to believe it either.

{¶17} Based on the totality of the circumstances, and construing the evidence in the light most favorable to Ms. Sturdevant, it is our view that Mrs. Likley's speech at the meeting was constitutionally protected opinion. The relative propriety of relying on rumors is an opinion. Contrary to Ms. Sturdevant's argument, Mrs. Likley did not attempt to persuade her listeners to believe that Ms. Sturdevant had actually engaged in an illicit affair. She did not even present that as one possibility among others. Mrs. Likley presented the rumor as proof that conclusions

should not be based on rumors. Thus, the trial court correctly granted summary judgment to Mrs. Likley on the defamation claim.

{¶18} Ms. Sturdevant has argued that the trial court should have applied the Restatement test to determine whether a rumor is a statement of fact for purposes of a defamation claim. Under Section 602 of the Second Restatement of the Law of Torts, a defendant in a defamation action does not abuse a conditional privilege to publish a defamatory rumor or suspicion "even if he knows or believes the rumor or suspicion to be false, if (a) he states the defamatory matter as rumor or suspicion and not as fact, and (b) the relation of the parties, the importance of the interests affected and the harm likely to be done make the publication reasonable." Restatement of the Law 2d, Torts, Section 602 (1977). The Ohio Supreme Court has not adopted the Restatement's rumor test. *See Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 22-34 (O'Donnell, J., dissenting). In any event, Section 602 is designed to determine whether a conditional privilege to publish a defamatory rumor has been abused. This Court has determined that, because it was constitutionally protected speech under the *Scott* test, Mrs. Likley's language was not defamatory as a matter of law. Therefore, there is no need to consider whether any conditional privilege could have been abused. Ms. Sturdevant's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING [MS.] STURDEVANT'S FALSE LIGHT CLAIM AGAINST [MRS.] LIKLEY.

{¶19} In her third assignment of error, Ms. Sturdevant argues that the trial court incorrectly granted Mrs. Likley summary judgment on the false light invasion of privacy claim based on its determination that the statement was constitutionally protected opinion. The Ohio

Supreme Court has held that "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed*." Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, syllabus.

{¶20} Section 652E of the Second Restatement of the Law of Torts, adopted by the Ohio Supreme Court in *Welling*, provides that it is not necessary that a plaintiff be defamed in order to recover for a false light invasion of privacy. "It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Restatement of the Law 2d, Torts, Section 652E, Comment b (1977). The false light into which the plaintiff is cast must be highly offensive to a reasonable person. "In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Welling* at ¶ 55.

{¶21} While a public accusation that a married woman has had an extramarital affair would undoubtedly be considered seriously offensive and expected to aggrieve the person so maligned, in this case, Mrs. Likley did not attribute to Ms. Sturdevant any "characteristics, conduct or beliefs that are false." Restatement of the Law 2d, Torts, Section 652E, Comment b (1977). She did not misrepresent Ms. Sturdevant's "character, history, activities or beliefs." *Welling* at ¶ 55. Therefore, the contested language is not actionable under a false light theory of recovery. Mrs. Likley told the crowd that she had heard what she believed to be baseless rumors about Ms. Sturdevant's private life. Ms. Sturdevant pointed to evidence in the record tending to

prove that she had never had an extra-marital affair, but she did not point to evidence tending to prove that what Mrs. Likley said was false. That is, Ms. Sturdevant has not pointed to evidence that Mrs. Likley had not in fact heard a rumor to that effect. Even construing the evidence and all reasonable inferences in favor of Ms. Sturdevant, we hold that no genuine issue of material fact exists and Mrs. Likley is entitled to judgment as a matter of law on the claim for false light invasion of privacy. The trial court correctly granted Mrs. Likley summary judgment on the false light invasion of privacy claim. Ms. Sturdevant's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT REGARDING [MS.] STURDEVANT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST [MRS.] LIKLEY.

{¶22} In order to prove a claim for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant intended to cause the plaintiff serious emotional distress, (2) the defendant's conduct was "extreme and outrageous," and (3) the defendant's conduct proximately caused the plaintiff's serious emotional distress. *Phung v. Waste Mgmt.*, *Inc.*, 71 Ohio St.3d 408, 410 (1994). The Supreme Court has elaborated on the meaning of "extreme and outrageous" conduct as follows:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Finley v. First Realty Property Mgt., Ltd.*, 185 Ohio App.3d 366, 2009-Ohio-6797, ¶ 35 (9th Dist.), quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983). Moreover, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not constitute "extreme and outrageous" conduct. *Yeager* at 375.

{¶23} "As a preliminary matter, a trial court makes the threshold determination of what constitutes 'outrageousness' as a matter of law." *Stembridge v. Summit Academy Mgt.*, 9th Dist. No. 23083, 2006-Ohio-4076, ¶ 35, quoting *Jarvis v. Gerstenslager Co.*, 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, ¶ 69. "Accordingly, in reviewing the trial court's granting of summary judgment to [Ms. Likley] on [Ms. Sturdevant's] intentional infliction of emotional distress claim, we must determine if the conduct alleged constitutes 'outrageous' conduct." *Stembridge* at ¶ 35.

{¶24} As set forth in our discussions of Ms. Likley's first, second and third assignments of error, at the meeting, Ms. Likley referenced the rumor she had purportedly heard about Ms. Sturdevant having an affair in the context of demonstrating that one should not believe rumors. Based upon the facts and circumstances of this case, we conclude that Ms. Likley's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency[.]" *See Finley* at ¶ 33. Accordingly, the conduct at issue was insufficient to support a claim of intentional infliction of emotional distress, and Ms. Sturdevant's fourth assignment of error is overruled.

III.

{¶25} Based upon the foregoing, Ms. Sturdevant's assignments of error are overruled. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

BRIAN D. SPITZ and FRED M. BEAN, Attorneys at Law, for Appellant.

CRAIG S. COBB and MICHAEL E. LYFORD, Attorneys at Law, for Appellee.