[Cite as *Sheperd v. Akron*, 2012-Ohio-4695.]

STATE OF OHIO      )               IN THE COURT OF APPEALS
                           )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

HALEY SHEPARD, et al.             C.A. No.      26266

     Appellees

     v.                                APPEAL FROM JUDGMENT
                                      ENTERED IN THE
CITY OF AKRON, et al.            COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
     Appellant                   CASE No.      2010-09-6645

DECISION AND JOURNAL ENTRY

Dated: October 10, 2012

WHITMORE, Presiding Judge.

{¶1}    Defendant-Appellant, City of Akron ("the City"), appeals from a judgment of the Summit County Court of Common Pleas denying its motion for summary judgment. We affirm in part and reverse in part.

I

{¶2}    At approximately 4 p.m. on a Friday in March 2007, the City's water department was notified of a water main break on Cordova, a dead-end residential street. John Frank, an inspector with the water department, was dispatched to the scene. When Frank arrived workers from the sewer and highway departments were already there.

{¶3}    According to Frank, the sewer department had just finished backfilling an excavation site in the street and had topped the site with "cold patch" when water began coming up through the site. Frank confirmed it was a main break and reduced the amount of water flowing to the affected pipe. Frank left the water on so that local residents would continue to

have water. Frank testified that he set two barricades around the freshly filled excavation site and informed dispatch of the situation. Dispatch notified John Thompson, the supervisor on duty at the time.

{¶4} Thompson testified that, based on the information provided to him, he decided to wait to fix the water main break until Monday morning. The Ohio Utility Protection Service ("OUPS") was contacted to locate the utility lines in the area in preparation for the repair work.

{¶5} Less than 24-hours later, Plaintiff-Appellees, Haley Shepherd and Dorothy Johnson, were injured when their car fell into the excavation site on Cordova. The large hole was obscured by water and no barricades were present.

{¶6} Appellees filed suit against the City, and the City filed a motion for summary judgment, arguing it was immune from liability. The court determined that the City was not entitled to immunity and denied its motion. The City now appeals and raises two assignments of error for our review. To facilitate the analysis, we consolidate the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN HOLDING THAT THE EXCEPTION OF R.C. 2744.02(B)(3) APPLIES TO DEFEAT THE APPELLANT, CITY OF AKRON'S IMMUNITY FROM LIABILITY UNDER R.C. 2744.02(A).

Assignment of Error Number Two

THE TRIAL COURT ERRED IN HOLDING THAT THE IMMUNITY DEFENSES OF R.C. 2744.03(A)(3) AND (A)(5) DO NOT APPLY IN THIS CASE.

{¶7} In its first and second assignments of error, the City argues that the trial court erred in finding that it was not immune from liability and thereby denying its motion for summary judgment.

{¶8} "Ordinarily, the denial of a motion for summary judgment is not a final, appealable order." *Rootstown Excavating, Inc. v. Smith*, 9th Dist. No. 25457, 2011-Ohio-6415, ¶ 20, citing *Nayman v. Kilbane*, 1 Ohio St.3d 269, 271 (1982). However, "[w]hen a trial court denies a motion in which a political subdivision * * * seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, syllabus. This Court reviews such an order de novo. *Id.* at ¶ 21.

{¶9} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The non-moving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991). *Accord Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 531 (9th Dist.1997).

{¶11} The pertinent question is whether, at this stage in the case, the City has established that it is immune from liability as a matter of law. We note that the appeal is limited to the issue of immunity.

{¶12} Determining whether a political subdivision is entitled to immunity under R.C. Chapter 2744 involves a three-tiered analysis. *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 8. Generally, a political subdivision has immunity from civil liability for injuries sustained by an act of the political subdivision. However, if a statutory exception to the general immunity applies the political subdivision may be civilly liable, but immunity may be restored under several statutory defenses.

General Immunity

{¶13} The first tier of the analysis begins with a general grant of immunity. R.C. 2744.02(A)(1) provides, in part, that "a political subdivision is not liable in damages in a civil action for injury * * * allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶14} A "'[p]olitical subdivision' * * * means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. 2744.01(F). The City is a political subdivision.

{¶15} "A 'governmental function' includes * * * the maintenance and repair of[] roads * * *." R.C. 2744.01(C)(2)(e). "A 'proprietary function' includes * * * [t]he establishment, maintenance, and operation of a utility, including * * * a municipal corporation water supply

system." R.C. 2744.01(G)(2)(c). Therefore, the general grant of immunity contained in R.C. 2744.02(A)(1) applies in this case.

Statutory Exception to General Immunity

{¶16} "The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute." *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 18. The second tier of the analysis is to determine whether R.C. 2744.02(B) contains an applicable exception to immunity.

Failure to Repair

{¶17} R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." The City argues that summary judgment was appropriate because Appellees have failed to produce any evidence that it was negligent in repairing the road. We agree.

{¶18} Robert Brooks, a resident in the area, stated that he noticed a sink hole developing in the street at least a week before the accident. He contacted the City's street department on two separate occasions requesting the City repair the street or barricade the area. Johnson testified that she was aware that the City had been working on the street prior to the accident, but never noticed any barricades in the area.

{¶19} On Friday, March 2, 2007, the sewer department backfilled an excavated hole in the street and topped it with "cold patch." Presumably while this repair was being completed the water main broke because water started coming up through the excavation site. The water main break was reported to the water department at approximately 4 p.m. The water department reduced the amount of water flowing through the affected pipe and contacted the OUPS to locate

the utility lines in the area. According to Thompson, a retired supervisor with the water department, the City is required to give OUPS 48-hours' notice before performing any repairs. If the City fails to provide such notice, it will be liable for any damages it causes to utilities. The water main was scheduled to be repaired on the following Monday morning. Less than 24-hours after the sewer department had repaired the road, the water had washed away the fill in the excavation site and left a large hole obscured by water. There is no evidence that the City was notified that the backfill had been washed away prior to the accident.

**{¶20}** The evidence does not support the conclusion that the City was negligent in repairing the road. Rather, the issue is whether the City was negligent in waiting until Monday to repair the water main break, and to properly protect the area until the hazard could be remedied.

Negligent Performance of Proprietary Function

**{¶21}** R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, * * * caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." "A 'proprietary function' includes * * * [t]he establishment, maintenance, and operation of a utility, including * * * a municipal corporation water supply system." R.C. 2744.01(G)(2)(c). The City's maintenance of the water main was a proprietary function, and therefore, this exception to the general grant of immunity applies.

a. Repair of Water Main

**{¶22}** The water main break was reported to the water department on a Friday at approximately 4 p.m. The break was on a dead-end residential street, and the water flow to the affected pipe had been reduced. The water was not completely shut off so that local residents would continue to have service. Thompson, the supervisor on duty, decided to schedule the

repair of the water main for Monday morning. Thompson testified that his decision was based on written, water department criteria for repairing water main breaks. Moreover, Thompson testified that the City was required to give OUPS a 48-hour notice before performing repairs so that it could locate the utility lines in the area. Failure to provide such notice would have made the City liable for any damages it caused to utilities during the repairs.

{¶23} Appellees have not provided any evidence to support the conclusion that the City was negligent in waiting to repair the break until Monday. Instead the issue appears to be whether the City was negligent in its failure to barricade the hazard. After reviewing the evidence in a light most favorable to Appellees, we cannot conclude that the City was negligent in scheduling the repairs for Monday morning.

b. Barricades

{¶24} Whether the barricades were set is a material question of fact that is in dispute. John Frank, the inspector that responded to the report of the water main break, testified that workers from the sewer and highway maintenance departments were on site when he arrived. Frank testified that he normally carries barricades in his truck, but that there were already barricades on location. Frank stated that he was not sure to which department the barricades belonged. Frank testified that after he reduced the water flow to the broken pipe, he took the two barricades that were already there and set them around the excavation site. He then left the scene to attend to other locations. It is unclear from Frank's deposition if workers from the sewer or highway departments were still on scene when he left, leaving open the possibility that the City workers may have taken the barricades with them. Frank further testified that barricades do get moved. Sometimes "[a] contractor or somebody needs [a barricade] so they might take them."

{¶25} Dorothy Johnson and Robert Brooks, both residents in the area, said that they never saw any barricades placed at the site. In his affidavit, Brooks stated that he noticed a sink hole was forming a least a week before the accident and he twice reported the hazard to the City's street department. Johnson testified that while she was aware that work on the street "had been going on for some time," she never saw barricades in the street.

{¶26} Frank and his supervisor at the time, John Thompson, both testified that the area would have been a hazard if there were no barricades. Viewing the evidence in a light most favorable to Appellees, there is a material question of fact as to whether the City was negligent. Therefore, the City cannot avoid potential liability under R.C. 2744.02(B)(2) as a matter of law. *See Howell v. Union Twp. Trustees*, 4th Dist. No. 96CA2430, 1997 WL 142388, *3 (Mar. 18, 1997).

Statutory Defenses to Restore Immunity

{¶27} Because we have concluded an exception to immunity applies, we must proceed to the third tier of the analysis. If an R.C. 2744.02(B) exception applies, immunity may still be restored under R.C. 2744.03(A). *Manning v. Avon Lake*, 9th Dist. No. 06CA008958, 2008-Ohio-1000, ¶ 20. R.C. 2744.03(A), in relevant part, states:

> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
>
> * * *
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶28} R.C. 2744.03(A) exceptions must be narrowly construed. *Sturgis v. Union Twp.*, 9th Dist. No. 05CA0007, 2006-Ohio-4309, ¶ 18. Routine decisions are not shielded under R.C. 2744.03(A)(3) or (A)(5). *Id.* "A 'discretionary' act necessarily involves '[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved * * *.'" *Id.*, quoting *Addis v. Howell*, 137 Ohio App.3d 54, 60 (2d Dist.2000).

{¶29} Frank and Thompson testified that without barricades around the excavation site, it would have been a hazard. Barricading a hazard in a roadway would be a routine decision. Viewing the evidence in a light most favorable to Appellees, there is a material question of fact as to whether the barricades were left around the excavation site after all of the City workers left the area.

{¶30} We cannot conclude, at this stage in the case, that the City is entitled to restore its immunity under R.C. 2744.03(A)(3) or (A)(5) as a matter of law.

Public Duty Rule

{¶31} Once it is determined that the City may be liable for injuries under R.C. 2744.02(B), the City may assert the public duty rule as a defense. *Rankin*, 118 Ohio St.3d 392, 2008-Ohio-2567, at ¶ 32. *Accord M.B. v. Elyria City Bd. of Educ.*, 9th Dist. No. 05CA008831, 2006-Ohio-4533, ¶ 12. The public duty rule does not create an independent cause of action; it is a way to negate the duty element. *Rankin* at ¶ 32; *M.B.* at ¶ 10. "The public duty rule provides a defense independent of sovereign immunity." *Swart v. Ohio Dept. of Rehab. & Corr.*, 133 Ohio App.3d 420, 423 (10th Dist.1999), citing *Hurst v. Ohio Dept. of Rehab. & Corr.*, 72 Ohio St.3d 325, 329 (1995), *overruled on other grounds, Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210.

**{¶32}** Because the City's appeal is limited to the court's denial of immunity and the public duty rule is independent of immunity, the issue is outside the scope of this appeal.

**{¶33}** The City's assignments of error are sustained in part and overruled in part. The City is entitled to immunity for its decision to repair the water main the following Monday morning. There remains a genuine issue of material fact as to whether the City is entitled to immunity for its failure to barricade the area.

### III

**{¶34}** The City's assignments of error are sustained in part and overruled in part. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

> Judgment affirmed in part,
> reversed in part,
> and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.


                                                  _____

                                                  BETH WHITMORE
                                                  FOR THE COURT


DICKINSON, J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶35} I would affirm the judgment below in total as I agree with the trial court that genuine issues of material fact remain. I would not narrow the issue to only the placement of barricades.


APPEARANCES:

CHERI B. CUNNINGHAM, Director of Law, and JOHN CHRISOPHER REECE and JANET M. CIOTOLA, Assistant Directors of Law, for Appellant.

GARY T. MANTKOWSKI, Attorney at Law, for Appellee.