[Cite as *Buck v. Reminderville*, 2014-Ohio-1389.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| JEFFREY BUCK | C.A. No. 27002 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| VILLAGE OF REMINDERVILLE, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellants | CASE No. CV 2009-11-8465 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

HENSAL, Judge.

{¶1}  Appellant, Michael Varga, appeals a judgment of the Summit County Court of Common Pleas that denied his motion for summary judgment. For the following reasons, this Court affirms.

I.

{¶2}  According to Jeffrey Buck, chief of police for the Village of Reminderville, Mr. Varga sent an email to a Village councilman that contained false and defamatory statements about him. Mr. Buck also alleges that Mr. Varga made false and defamatory statements about him during a Village human resources committee meeting. The subject email was read aloud during the meeting and disseminated to the other committee members. The meeting was tape-recorded and the tape was later transcribed. Both the email and the transcript were made available as a public record to anyone who requested it.

{¶3} Mr. Buck sued the Village and Mr. Varga for defamation. Mr. Varga moved for summary judgment, which was denied by the trial court. He filed an interlocutory appeal and raises one assignment of error for this Court's review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶4} Mr. Varga argues that the trial court erred in denying his motion for summary judgment as he is immune from liability for any statements he made in either the email or at the human resources committee under the absolute privilege doctrine. This Court disagrees.

{¶5} The denial of a motion for summary judgment is not ordinarily a final, appealable order. *Sheperd v. Akron*, 9th Dist. Summit No. 26266, 2012-Ohio-4695, ¶ 8. Under the Ohio Constitution, Article IV, Section 3(B)(2), this Court only has jurisdiction to hear an appeal of a judgment or final order. However, Revised Code Section 2744.02(C) provides that "[a]n order that denies * * * an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter *or any other provision of the law* is a final order." (Emphasis added.) The Ohio Supreme Court has recognized that this section applies to render the denial of immunity under any state or federal law a final, appealable order. *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 15. This is because Section 2744.02(C) is to be interpreted broadly in favor of an early appeal when there is a question about the availability of an immunity as a defense. *Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, ¶ 19-20. "Failure to give effect to the language of R.C. 2744.02(C) by barring immediate appeal of denials of * * * immunity * * * would defeat the purpose for which the immunity exists." *Summerville* at ¶ 40. Because the "determination of immunity could be made

prior to investing the time, effort, and expense of the courts, attorneys, parties and witnesses," a plain reading of Section 2744.02(C) serves to further judicial economy. *Id*. at ¶ 39, quoting *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 26.

{¶6}   There is no dispute that Mr. Varga was employed as a Village police officer at the time he made the allegedly defamatory statements.  Further, Ohio courts have characterized the doctrine of absolute privilege as an "immunity" from liability on a defamation claim.  *See M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 506 (1994).  Accordingly, this Court concludes that it has jurisdiction to consider his appeal as it is a final order as defined by Section 2744.02(C).  *See Marcum v. Rice*, 10th Dist. Franklin Nos. 98AP-717, 98AP-718, 98AP-719, and 98AP-721, 1998 WL 887051, * 5 (Nov. 3, 1998) (holding that an order denying a motion to dismiss based on the doctrine of absolute privilege was a final order under Section 2744.02(C)).

{¶7}   An appellate court reviews an award of summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party."  *Garner v. Robart*, 9th Dist. Summit No. 25427, 2011-Ohio-1519, ¶ 8.  Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  The movant must specifically identify the portions of the record that demonstrate an absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  If the movant satisfies this initial burden, the nonmoving party has a reciprocal burden to point to specific facts that show a genuine issue

of material fact for trial. *Id.* The nonmoving party must identify some evidence that establishes a genuine issue of material fact, and may not rely upon the allegations and denials in the pleadings. *Sheperd* at ¶ 10.

{¶8} "[D]efamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Morgan v. Community Health Partners*, 9th Dist. Lorain No. 12CA010242, 2013-Ohio-2259, ¶ 8, quoting *Sturdevant v. Likley*, 9th Dist. Medina No. 12CA0024-M, 2013-Ohio-987, ¶ 7. Ohio law recognizes that certain communications that may be defamatory are shielded from liability for defamation under the privilege doctrine. *Costanzo v. Gaul*, 62 Ohio St.2d 106, 108 (1980). "A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, would be defamatory, and actionable." *Id.*

{¶9} There are two classes of privileged communications: (1) absolutely privileged and (2) qualified or conditionally privileged. *Id.* "The basic difference between the two as generally stated is that complete protection is afforded by absolute privilege, whereas a qualified or conditional privilege affords protection only in the absence of ill motive or malice in fact." *Id.* at 108–109. Thus, if the statement is subject to an absolute privilege, the speaker is not held liable for defamation regardless of his motives for making the statement. *Morgan* at ¶ 10, citing *M.J. DiCorpo, Inc.*, 69 Ohio St.3d at 505.

{¶10} "The application of an absolute privilege is to be found in only very limited areas of activity in our society. It has been generally limited to legislative and judicial proceedings, and other acts of state[.]" *Costanzo* at 109. The Ohio Supreme Court has recognized that

statements made by members of local governmental bodies relating to a matter under consideration, discussion or debate during official proceedings are absolutely privileged. *Costanzo* at 110.

{¶11} In support of his motion for summary judgment, Mr. Varga submitted his deposition along with the depositions of Mr. Buck, former Village councilman Steve Milano, and Councilman Edward Walter. Mr. Walter, who served on the human resources committee, testified that the committee was created by a council resolution as "an authorized extension of council to receive information about complaints or concerns of [V]illage employees." The committee was comprised of three councilmembers and two Village citizens who were appointed by the mayor. The committee discussed such topics as liability and medical insurance, vacation and leave policy, employee manuals and policy and procedure manuals. According to Mr. Walter, the committee was "just an information agency * * * not an investigative agency." He further testified that the purpose of forming the committee was "to create an open door so employees could bring [forth] rumors and concerns * * *."

{¶12} Mr. Milano testified that he was both council president and chairman of the human resources committee. According to Mr. Milano, it was not the committee's job "to do anything [with a complaint] * * * except[ ] * * * hand it off to the appropriate authority to look at and validate or invalidate."

{¶13} How Mr. Varga's contact with the committee was initiated is a matter of dispute. Mr. Varga testified that, in September or October of 2009, Mr. Milano called him to inquire whether he had any knowledge of alleged wrongdoing by either Mr. Buck or the Village's mayor. Mr. Varga had testified before Village council one month earlier in the disciplinary appeal hearing of another police officer and he believed the committee wanted him to "give [his]

knowledge of what [he] knew about what was going on in the police department" after hearing his testimony. Mr. Varga further testified that, after his first telephone conversation with Mr. Milano, he began to compile a list of what he perceived to be Mr. Buck's alleged misconduct both from his personal knowledge and from what other police officers had reported to him. According to Mr. Varga, the night before he was scheduled to attend the committee's November 16, 2009, meeting, he sent an email to Mr. Milano that listed all the alleged instances of Mr. Buck's misconduct, which he intended to discuss at the next day's committee meeting.

{¶14} Mr. Milano testified that Mr. Varga contacted him numerous times leading up to the committee's November 16, 2009, meeting. According to him, the substance of the conversations was Mr. Varga's complaints about the police department and, in particular, Mr. Buck. Mr. Milano testified that he asked Mr. Varga to put his complaints in writing so that he had something official on which to take action. He informed Mr. Varga that he could attend either a Village council meeting or a meeting of the human resources committee. Mr. Milano testified that he believed Mr. Varga intended to attend a Village council meeting to talk about his complaints, but had to postpone doing so due to a death in his family. According to Mr. Milano, he had no advance notice that Mr. Varga was going to send his November 15th email.

{¶15} Mr. Varga testified that he sent the email and attended the meeting at the committee's request. He maintains that he did not know what the committee intended to do with the information he presented. According to Mr. Milano, Mr. Varga chose to send the email and attend the meeting. He maintains that Mr. Varga was offered the opportunity to attend the meeting because it was "a neutral place for him to come and lodge a complaint and * * * that the * * * committee [would] * * * hear the complaint [and] try to figure out the most appropriate venue to establish the validity or invalidity of those complaints and have [the] person [assigned

to the complaints] do the investigation." Mr. Milano further testified that he told Mr. Varga that "this was his opportunity to come forward and be heard and we would look at it responsibly and seriously and to the extent that we were allowed to per our resolution."

{¶16} Mr. Milano testified that the November 16, 2009, meeting was a regularly scheduled meeting of the committee, and that Mr. Varga's matter was added to the agenda. According to Mr. Milano, after the public portion of the meeting, the committee went into executive session, which Mr. Varga attended. There was no evidence that Mr. Varga was sworn under oath prior to speaking to the committee. A copy of Mr. Varga's email to Mr. Milano was provided to the committee members at the beginning of the executive session and collected at the end of the session. Mr. Milano further testified that he tape-recorded the executive session due to the severity of Mr. Varga's complaints. According to Mr. Varga, he believed that the information would not be disseminated outside of the committee, and that he did not intend his allegations to trigger an investigation. Rather, his "intent was [to] come * * * and testify [to] what [the committee] wanted to know." He further testified that he "could care less what they did with [the information]" as he was planning on leaving the department and was only there at the committee's request. Mr. Buck sued the Village and Mr. Varga for defamation four days after the November 16, 2009, meeting when the email and transcript of the executive session was made available as a public record. Mr. Walter testified that, as a result of the pending litigation, the committee did not take any action on Mr. Varga's allegations.

{¶17} In ruling on Mr. Varga's motion for summary judgment, the trial court declined to extend the Ohio Supreme Court's holding in *Costanzo* to find that his alleged statements were absolutely privileged. The trial court found that, since Mr. Varga was not a member of the human resources committee, his alleged statements were not immune from liability for

defamation under the absolute privilege doctrine. Mr. Varga argues that the trial court erred in denying his motion for summary judgment as other districts have concluded that the absolute privilege doctrine is available to shield from liability individuals who were not members of the governmental body before which he or she appeared. He maintains that the privilege was created to further "unfettered discussion and debate on matters of public concern," and that to refuse to allow nonmembers the privilege runs counter to the goals of the privilege in the first instance.

{¶18} Viewing the evidence in a light most favorable to Mr. Buck, this Court concludes that the trial court did not err in finding that Mr. Varga's statements were not absolutely privileged. The Ohio Supreme Court was clear that the absolute privilege doctrine is applicable in only very limited circumstances, specifically, legislative and judicial proceedings. *Costanzo*, 62 Ohio St.2d at 109. Black's Law Dictionary defines "legislative" as "[o]f or relating to lawmaking or to the power to enact laws." *Black's Law Dictionary* 919 (8th Ed.2004). There is no evidence that the human resources committee had either a legislative or a judicial function. The deposition testimony of Mr. Milano and Mr. Walter established that its function was in part to field concerns from Village employees and relay the information to the appropriate individual or department for further investigation. Mr. Walter testified that the committee could vote to recommend an issue before it to council, but could not make a binding decision. Accordingly, the testimony revealed that the committee acted in an advisory or policy-making role to Village council. This Court has previously refused to extend the absolute privilege doctrine to statements made at a meeting of a policy-making board as it was not considered a "legislative body of a sovereign state." *Long v. Brumbaugh*, 9th Dist. Summit No. 19755, 2000 WL 530356, *3 (May 3, 2000). *See also Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 27-28 (holding that comment made by member of city

council during executive session of village council meeting about how an employee dressed was not entitled to absolute immunity because council was acting in administrative, rather than legislative, role at the time).

{¶19} Mr. Varga cites to several cases from different districts, including the case of *N. Coast Cable L.P. v. Hanneman*, 98 Ohio App.3d 434 (8th Dist.1994), in support of his argument that other courts have found that statements made by nonmembers of a governmental committee are absolutely privileged. In *Hanneman*, the plaintiff's former business partner and employee testified before a meeting of a municipal public utilities committee that the plaintiff's original minority investors were a "sham." *Id*. at 438. The plaintiff sued him for, inter alia, defamation. The Eighth District found that the statements Hanneman made at the committee meeting were absolutely privileged because the committee sent him a letter requesting that he testify at the meeting. *Id*. at 439-440. The court opined that Hanneman's decision to testify was not entirely voluntary since it came as a result of the committee's letter. *Id*. at 439.

{¶20} In the instant case, the trial court explicitly declined to follow the Eighth District's holding in *Hanneman*. This Court agrees that the holding in *Hanneman* is inapplicable under the facts of this case. We note that there is a genuine issue of material fact as to whether Mr. Varga appeared at the meeting at the request of the committee or by his own volition as a means to voice his concerns about Mr. Buck and the police department. As the holding in *Hanneman* turns on the fact that the defendant appeared before the committee at its request, this Court cannot say that the same circumstances are present in this case due to the conflicting deposition testimony on the issue.

**{¶21}** Given the fact that the doctrine of absolute privilege is only applied to limited circumstances, this Court does not conclude that the trial court erred in denying Mr. Varga's motion for summary judgment. Mr. Varga's assignment of error is overruled.

III.

**{¶22}** Mr. Varga's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
DISSENTING.

{¶23} I respectfully dissent from the judgment of the majority because I would conclude that the entry denying Mr. Varga's motion for summary judgment is not a final, appealable order.

{¶24} The denial of a motion for summary judgment is not ordinarily a final, appealable order. *Rootstown Excavating, Inc. v. Smith,* 9th Dist. Summit No. 25457, 2011-Ohio-6415, ¶ 20. Thus, absent specific authority, the entry before us would not be appealable. The majority asserts that the trial court's ruling is appealable pursuant to R.C. 2744.02(C), reasoning that the trial court's determination concerning the applicability of absolute privilege in the context of a defamation claim constitutes a denial of an immunity under "any other provision of the law[.]" R.C. 2744.02(C) provides that "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." *See also Summerville v. Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 13-14. This appeal does not involve the statutory immunity provisions within Chapter 2744 itself; instead, it involves interpretation of the phrase "any other provision of the law" within R.C. 2744.02(C). R.C. 2744.01(D) provides that, as used in Chapter 2744, "'Law' means any provision of the constitution, statutes, or rules of the United States or of this state; provisions of charters, ordinances, resolutions, and rules of political subdivisions; and written policies adopted by boards of education. *When used in connection with the 'common law,' this definition does not apply.*" (Emphasis added.). Thus, applying this definition to the phrase "any other provision of the law[,]" "law" would include provisions of constitutions, statutes and rules, but would not include "common law." *See, e.g., Summerville* at ¶ 15, 41

(applying the definition contained in R.C. 2744.01(D) to conclude that denial of immunity afforded under a federal *statute* constituted a final order under R.C. 2744.02(C)). At a minimum, it appears that the legislature has recognized that the phrase "common law" is a term of art. "Common law" has been defined as "[t]he body of law derived from judicial decisions, rather than from statutes or constitutions[.]" *Black's Law Dictionary* 293 (8th Ed.2004).

{¶25} The Tenth District has determined, in part, that, because the definition of "State" in R.C. 2744.01(I) is defined as the State of Ohio including the Supreme Court and other instrumentalities of the State of Ohio, the "rules" referred to in R.C. 2744.01(D) must also include doctrines created via case law. *See Marcum v. Rice*, 10th Dist. Franklin Nos. 98AP-717, 98AP-718, 98AP-719, and 98AP-721, 1998 WL 887051, *2 (Nov. 3, 1998). However, I am not persuaded by the *Marcum* Court's reasoning. I cannot conclude that the word "rules" is intended to include case law, particularly since R.C. 2744.01(D) itself acknowledges there is a distinction between "common law"/case law and other forms of law. It would seem logical that using the word "rules" would implicate the various bodies of law commonly known as rules, such as the civil rules, rules of superintendence, rules of evidence, or criminal rules.

{¶26} While I do not dispute that R.C. 2744.02(C) includes the ability to appeal denials of immunity other than those based in that chapter,[1] *see* R.C. 2744.02(C); R.C. 2744.01(D), I cannot conclude that the denial of the benefit of the absolute privilege pertaining to defamation is

---

[1] For example, R.C. 2151.421(G)(1)(a) provides immunity to certain individuals and entities who report suspected child abuse in good faith and in compliance with the statute. *See* R.C. 2151.421(G)(1)(a) ("Except as provided in division (H)(3) of this section, anyone or any hospital, institution, school, health department, or agency participating in the making of reports under division (A) of this section, anyone or any hospital, institution, school, health department, or agency participating in good faith in the making of reports under division (B) of this section, and anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding.").

appealable. The parties have not pointed to anything which would even suggest that the absolute privilege as expressed in Ohio case law precedent constitutes any provision of the constitution, any statute, any rule, or anything else that is included within the term "[l]aw" as defined by R.C. 2744.01(D). Accordingly, because I would conclude we are without jurisdiction to hear this appeal, I respectfully dissent.

APPEARANCES:

KENNETH A. CALDERONE and JOHN R. CHLYSTA, Attorneys at Law, for Appellant.

KENNETH D. MYERS, Attorney at Law, for Appellee.